**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| NANCY KLICKA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:05-1320-MJP-BM |
| ) | |
| v. ) | |
| ) | |
| THE DIOCESE OF CHARLESTON,) | **REPORT AND RECOMMENDATION** |
| REV. LEE SELZER AND MARY ) | |
| KAY RUSHMAN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action was filed by the Plaintiff in the South Carolina Court of Common Pleas, Fifth Judicial Circuit, and was subsequently removed to this Court by the Defendants on the basis of federal question jurisdiction. 28 U.S.C. §§ 1331, 1441(b). Plaintiff asserts claims for slander (first cause of action), conspiracy to commit slander (second cause of action), and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (third cause of action).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 14, 2006. Plaintiff filed a memorandum in opposition to the Defendants' motion on March 9, 2006. Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

Plaintiff was employed as a bookkeeper at the St. Joseph Catholic School in Columbia, South Carolina. The Defendant Lee Selzer is a Priest at St. Joseph's, while the Defendant Mary Kay Rushman is a church administrative employee. Plaintiff's office was located in the parish office building, on the same city block as St. Joseph School, but not actually in the school itself. Plaintiff's Deposition, p. 19. In 2003, when the school was looking for a new principal, Plaintiff suggested to Monseigneur Charles Rowland, Pastor of the St. Joseph Parish, that she should relocate her office to the school so that she could work more closely with the new principal. Plaintiff testified that Rowland agreed that this was a good idea. Plaintiff's Deposition, pp. 19-20.

Towards the end of the 2003/2004 school year, Selzer introduced Sister Julienne Guy as the school's new principal. Plaintiff's Deposition, p. 48. Sister Julienne was not due to take up her new position until August 2004, and prior to her arrival Plaintiff moved the contents of her office from the St. Joseph parish hall to the St. Joseph school building on or about July 1, 2004. Collins Deposition, pp. 11-12. Plaintiff moved her office into what was the teacher's lounge, although she had never discussed using the teacher's lounge as her office with school or church management. Plaintiff's Deposition, pp. 20, 23, 31, 34-35,149; Collins Deposition, pp. 11-12. When Sister Julienne found out what Plaintiff had done, she told Plaintiff she needed to move her office back to the parish hall. Plaintiff's Deposition, pp. 65-66; Guy Statement. Sister Julienne also went to see Msgr. Rowland, but when he was not there she returned with Father Timothy Tebalt and Rushman. Rushman subsequently left at Plaintiff's request, following which Plaintiff admits she "got very

---

[2] The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



unprofessional" with Sister Julienne.  Plaintiff's Deposition, pp. 41-46; see also Guy Statement. During the course of this confrontation, Plaintiff told Sister Julienne that she had "no respect for her", and complained about Sister Julienne's treatment of Plaintiff's daughter ten years earlier when Sister Julienne had been principal of the Cardinal Newman Middle School. Id.  Plaintiff also told Father Tebalt that he had "no clue" about what was going on. Plaintiff's Deposition, p. 42.  Plaintiff told Sister Julienne and Father Tebalt, who were her supervisors, that if they wanted her office moved back they would have to do it themselves, and, in the hallway outside of her office, again told Sister Julienne that she had no respect for her and that she needed to "get her act together" in the presence of Rushman and Harold Bayerl, the Interim Principal for the month of July. Plaintiff's Deposition, pp. 52-54; see also Plaintiff's Exhibit 13; Defendants' Exhibit A..

Following this incident, Sister Julienne, Father Tebalt, Bayerl and Rushman prepared written statements concerning what had happened.  See Defendants' Exhibit A.  Plaintiff does not dispute the general accuracy of these statements. Plaintiff's Deposition, pp. 53-57.  Father Selzer then drafted a letter of reprimand and written warning regarding her conduct, which Plaintiff was to sign. Plaintiff's Deposition, p. 69.  Plaintiff refused to sign because she did not agree with the contents of the document. See generally, Plaintiff's Deposition, pp. 68-78.  Father Selzer offered to confirm that, by signing the document, Plaintiff was not indicating her agreement, but Plaintiff still refused to sign. Id; see also Defendants' Exhibit B.  Plaintiff did separately acknowledge, however, that she had acted unprofessionally and had made a mistake. Selzer Deposition, pp. 130, 138.

After obtaining the approval of Msgr. Rowland, Father Selzer fired the Plaintiff on August 5, 2004. Selzer Deposition, pp. 108, 115, 121, 125-126; see Defendants' Exhibit C. Plaintiff

3



contends that a male church employee, Julio Garcia, received more favorable treatment because he only received a written warning on a first offense of inappropriate conduct, and was only discharged after a second incident. Plaintiff further alleges that following her termination, disparaging comments were made about her and that the office locks were changed, thereby creating a false impression about her and harming her reputation.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Title VII Claim)

In her third cause of action, Plaintiff alleges that she was discriminated against on the basis of her sex when she was terminated by the Defendant, and that the Defendant also discriminated against her in terms of "salaries and benefits". Since the only basis for this case being in federal court is the federal question jurisdiction provided by Plaintiff's third cause of action under Title VII, and since the Defendants contend that Plaintiff's Title VII claim is subject to dismissal on procedural grounds, as well as on the merits, the Court first turns to consideration of that claim.



**Procedural Issues**

Defendants first argue that Plaintiff failed to exhaust her administrative remedies under Title VII prior to filing this lawsuit, and that her sex discrimination claims under that statute are therefore barred. Defendants are correct that, in order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, Title VII requires that a claimant file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e). It is undisputed that South Carolina is a deferral state, and that the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of initiating state proceedings. Hence, Plaintiff had three hundred (300) days to file her administrative charge with SCHAC following an act of discrimination, and a failure by the Plaintiff to do so bars her from pursing a Title VII lawsuit as to any such claim in this Court. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); Sloop v. Memorial Mission Hosp. Inc. 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court].

Here, it is undisputed that Plaintiff did not file an administrative charge of



discrimination with SCHAC until after the Defendants pointed out in their answer that she had failed to exhaust her administrative remedies. A copy of the standard administrative charge form has not been provided to the Court; however, a copy of Plaintiff's initial inquiry questionnaire has been provided, bearing a date of May 10, 2005, which was within three hundred (300) days of Plaintiff's termination. Plaintiff also submitted an affidavit to the administrative agency, which was apparently her formal charge. See Plaintiff's Exhibits 14 & 15; Defendants' Exhibits D & E; see also Plaintiff's Deposition, pp. 82-84. Plaintiff thereafter received a right to sue letter on July 22, 2005. Defendants' Exhibit F. Therefore, Plaintiff had exhausted her administrative remedies as of that date, and since she could have amended her Complaint to add a Title VII claim at that time, her Title VII claim is not in and of itself barred for failure to exhaust administrative remedies simply because it was already in her pleadings. Portis v. State of Ohio, 141 F.3d 632, 634 (6th Cir. 1998).

However, Defendants also argue that, even assuming Plaintiff exhausted her administrative remedies with respect to her termination claim, she failed to exhaust her administrative remedies with respect to any pay and compensation claim, because that was not a claim Plaintiff raised before the administrative agency. As a general rule, only the claims set forth in an administrative charge are exhausted for purposes of a subsequent lawsuit; Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-248 (4th Cir. 2000) [A plaintiff's EEOC charge defines the scope of his subsequent right to institute a civil suit]; Lattimore v. Polaroid Corp., 99 F.3d 456, 464-465 (1st Cir. 1996); although claims that were not included in an administrative charge but were nonetheless investigated by the administrative agency as part of its investigation of the claimant's allegations may also be considered exhausted for purposes of a subsequent lawsuit. Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000); Tran v. Standard Motor Products, Inc., 10 F.Supp.2d 1199,

6



1208 (D.Kan. 1998) [even where claimant fails to assert a claim in their administrative charge, if that claim was nevertheless considered by the administrative agency as part of the administrative investigation of the claimant's administrative filing, then the claim is properly exhausted]; Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) ["only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit"]; but see LaPorta v. City of Chicago, No. 95-2899, 1999 WL 965970 at * 3 (N.D.Ill. 1999).

   A review of Plaintiff's initial inquiry questionnaire shows that, when asked to check all of the claims that had happened to her in the last three hundred days, Plaintiff checked the categories of "fired", "disciplined", and "harassed". This form also included sections dealing with wages and benefits; however, Plaintiff did not check those sections. See Defendants' Exhibit D, Bates Stamp 412045. In the narrative section of this document, Plaintiff generally discusses the events surrounding her termination. At the conclusion of this narrative, however, Plaintiff further states "[a]dditionally, I was not paid for the last five days that I worked at St. Joseph Church". Id., at Bates Stamp 412047. Reviewing the affidavit Plaintiff filed with the administrative agency, Plaintiff again generally relates the circumstances of her termination, but also includes a paragraph that reads: "To rub salt into the wound, the Diocese of Charleston paid the Custodian for the five (5) day leave of absence, but still owes me my wages for the last four (4) days I worked for them. I have repeatedly asked them to pay me, but they have refused, and I have now had to go to the Labor Board on that issue." Defendants' Exhibit E, at Bates Stamp 412055. These comments relating to Plaintiff not having received four days of pay relate to Plaintiff's contention that, when

7



she was fired, she was owed three or four days of pay in the form of vacation time benefits.[3] Plaintiff did not ultimately receive this money until May 2005, after she had filed a complaint with the South Carolina Department of Labor.

This evidence is sufficient to establish for purposes of summary judgment that Plaintiff's administrative charge included a claim regarding her termination as well as for not having received three or four days accrued vacation pay following her termination. Evans, 80 F.3d at 963 [discrimination claims reasonably related to the original complaint may be maintained in a subsequent Title VII lawsuit]; Miles v. Dell, Inc., 429 F.3d 480, 491-492 (4th Cir. 2005) [claims in a judicial complaint that are reasonably related to the Plaintiff's administrative charge may be advanced in a civil lawsuit]. However, to the extent Plaintiff has otherwise intended to assert a general claim relating to her compensation and benefits, no evidence has been presented to the Court that Plaintiff ever raised any such claim before the administrative agency, or that any such claim was investigated by that agency. Williams v. Enterprise Leasing Co. of Norfolk/Richmond, 911 F.Supp. 988, 993 (E.D.Va. 1995) [the burden of proving satisfaction of administrative requirements falls on the plaintiff].[4] Therefore, Plaintiff failed to exhaust her administrative remedies with respect to such a general claim, and she is barred from asserting such a claim in this lawsuit.

---

[3]Plaintiff says four days in some documents, and three days in others.

[4]Plaintiff argues that her administrative charge asserted a claim relating to pay and benefits because she checked the boxes "benefits" and "back pay" on the "settlement information" section of her initial questionnaire. See Defendants' Exhibit D, at Bates Stamp 412050. However, those sections were checked as indicating the type of relief Plaintiff would want if she prevailed on her claim, which relief also included "damages". That has nothing to do with what underlying discrimination claims Plaintiff was asserting.



**Analysis of Plaintiff's Title VII Claim.**

Plaintiff's discrimination claim is for disparate treatment, based on her allegations that she was discriminated against on the basis of her sex when she was terminated and when she failed to receive payment for three or four days of accrued leave time following her termination. Disparate treatment cases require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff has not argued that she has any direct evidence of sex discrimination.[5] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claims, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the McDonnell Douglas framework.[6]

The United States Supreme Court articulated a three-part procedure for analyzing discrimination cases in McDonnell Douglas. First, the Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created

---

[5]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[6]Consideration of Plaintiff's claims under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. Here, however, both parties have argued Plaintiff's claim only under the traditional McDonnell Douglas proof scheme.

9



that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on the Plaintiff's gender. Despite these shifting burdens of production, however, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr., 113 S.Ct. 2742, 2747 (1993); Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 398 (7th Cir. 1997).

In order to establish her prima facie case, Plaintiff must show that 1) she is a member of a protected class; 2) she was performing her job satisfactorily; 3) she suffered an adverse employment action; and 4) similarly situated employees not in her protected class received more favorable treatment, she was replaced in her job by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 506-510 (1993); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Hughes v. Bedsole, 48 F.3d 1376, 1384 (4th Cir. 1995); King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003).[7] It is undisputed that Plaintiff is a member of a protected class, and that she was terminated from her employment on August 5, 2004. There is also apparently no dispute that Plaintiff did not receive her three or four

---

[7] The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Education Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).



days of accrued vacation time benefits until several months after her termination. However, Defendants do contest that Plaintiff was satisfactorily performing her job, or that any adverse employment action was taken under circumstances giving rise to an inference of unlawful sex discrimination.

With respect to Plaintiff's job performance, Defendants argue that Plaintiff was not satisfactorily performing her job because Plaintiff herself admits she engaged in inappropriate conduct, which is what Defendants contend led to Plaintiff's discharge. However, when considering this prong of the prima facie case, the question is how Plaintiff was performing her job *prior* to the event which resulted in her termination, as that event is itself tied up in the underlying issue of whether Plaintiff's termination was an act of discrimination. *Cf.* Brown v. Chicago Transit Authority, No. 97-7041, 1999 WL 495622 at *5 (N.D.Ill. June 28, 1999) [Plaintiff's general job performance, not the specific incident(s) which may have precipitated his termination, is the proper question to consider in determining whether Plaintiff can establish the satisfactory performance element of his prima facie case]. The evidence shows that, prior to that specific incident, Plaintiff had been employed by the Diocese of Charleston for thirteen years as a female lay staff member in the position of St. Joseph School bookkeeper, and there is no evidence that she had not performed that job well or had ever been reprimanded during those thirteen years. See generally, Rowland Deposition, pp. 18-21; Selzer Deposition, p. 117. This evidence is sufficient for purposes of summary judgment to satisfy the requirements of the second prong of Plaintiff's prima facie case.

With regard to the fourth prong, Plaintiff contends that the way this matter was handled, and her resulting termination, was because of a gender animus. Defendants argue that there is no evidence of gender animus in this case, and after careful review and consideration of the

11



evidence and arguments presented, the undersigned is constrained to agree. First, it is undisputed that Plaintiff was replaced in her job by another female. Plaintiff's Deposition, p. 98. As for Plaintiff's argument that there is an inference of discrimination because a male employee who engaged in similar conduct was treated more favorably, the evidence before the Court shows that when allegations of misconduct were made against the male employee identified by the Plaintiff (Julio Garcia), the results of the investigation were inconclusive. Garcia was then put on notice with a written reprimand, which he accepted and signed indicating that any further problems would result in his discharge. See Defendants' Exhibit G.[8] This was in fact the very same option that had been offered to the Plaintiff; however, Plaintiff refused to sign her written reprimand, which was the reason for her termination, as is made clear by her termination letter. Defendants' Exhibit C. This is not evidence of disparate treatment. See Cook v. CSX Transp 'n Corp., 988 F.2d 507, 511 (4th Cir. 1993); see Hughes, 48 F.3d at 1384-85; Lucas v. Chicago Transit Authority, 367 F.3d 714, 733 (7th Cir. 2004) [holding that failure of a plaintiff alleging disparate discipline to show that employees outside the protected class were similarly situated to her in all relevant respects is fatal to her claim]; *Cf.* Frazier v. Dep't of Labor, No. 01-198, 2003 WL 21254424, at *2 (S.D.Ind. March 4, 2003) ["In deciding whether another employee is similarly situated to the plaintiff, the court must consider 'all relevant factors, the number of which depends on the context of the case.'"] (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)).

As for Plaintiff's pay claim, Plaintiff has presented evidence to show that a male employee (Garcia) was paid for time that he was suspended prior to his discharge. Mallios Deposition, pp. 55-56. Of course, Plaintiff was never suspended, and there were therefore no days

---

[8]As interpreted from the original document, which is in Spanish. Defendants' Exhibit G.



for her to be paid for any suspension. While Plaintiff did not in fact get paid for her three or four days of accrued leave for several months after her termination, there is nothing in the evidence to indicate that this was a result of sex discrimination. Selzer Deposition, pp. 95-97; Rowland Deposition, p. 13. The undersigned can discern no inference of unlawful sex discrimination in these facts.

In any event, the Defendants have set forth a legitimate, non-discriminatory reason for the employment decisions at issue; Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir. 1982); see EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [the defendant's burden is only one of production, not of persuasion]; and where a defendant rebuts the employee's inference of discrimination by demonstrating a legitimate, non-discriminatory reason for the employment decision, in order to prevail the Plaintiff/employee must demonstrate by a preponderance of the evidence that the employer's proffered reason is a mere pretext for discriminatory conduct. To make this demonstration, Plaintiff must show that "but for" her employer's intent to discriminate against her because of her gender, she would not have suffered the adverse employment action. EEOC, 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [gender animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present sufficient evidence of pretext to survive summary judgment in this case.



First, Plaintiff has failed to provide any evidence to show that male employees who engaged in similar conduct received more favorable treatment. See discussion, supra. See also Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ["[T]o satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."] (internal quotations omitted). The Fourth Circuit requires that the plaintiff in a Title VII disparate discipline case prove that "the specific factual circumstances surrounding her [disciplinary infraction], as well as her overall performance at th[e] time [of the infraction], were substantially similar to those of the [comparator] whom she cites as having received more favorable treatment." Hughes, 48 F.3d at 1385. The one male employee she identifies, Julio Garcia, did not engage in the conduct which, in Plaintiff's case, resulted in her termination. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) [evidence must show that the quantity and quality of the comparator's alleged misconduct be nearly identical]. It is also undisputed that Plaintiff did in fact commit the infraction for which she was terminated. See Ross v. Communications Satellite Corp., 759 F.2d 355, 366 (4th Cir. 1985) ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct"], overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Further, Plaintiff has failed to present any evidence sufficient to create a genuine issue of fact that Father Selzer had any gender animus towards the Plaintiff, or indeed any gender animus at all.

In order to maintain this claim, Plaintiff must present credible evidence to show that the Defendant's employment decision was *based on her gender*, not because the Defendant was simply unfair or disliked the Plaintiff, or because of other such factors. Jamil v. Secretary Dep't of

14



Defense, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); Holder v. Raleigh, 867 F.2d 823, 828 (4th Cir. 1989); Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989), cert. denied, 111 S.Ct. 101 (1992); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987); see generally Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); Jones v. Orleans Parish School Board, 679 F.2d 32, 38 (5th Cir. 1982), modified on other grounds, 688 F.2d 342 (5th Cir. 1982), cert. denied, 461 U.S. 951 (1983); North Carolina Dep't of Corrections v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983); St. Mary's Honor Ctr. v. Hicks, supra.

In Hawkins v. Pepsico, Inc., 203 F.3d 274 (4th Cir. 2000), the Fourth Circuit Court of Appeals held that courts must not "transmute ... ordinary workplace disagreements between individuals of different [genders] into actionable [gender] discrimination[ ]" where the plaintiff "has shown nothing more than a difference of opinion and personality conflict with her supervisor." Id., at 276. In each case, "legally sufficient evidence" that adverse employment actions were more likely than not motivated by gender (or some other factor prohibited by Title VII), not by personal antipathy or resentment, is required to withstand summary judgment in a Title VII disparate treatment case. Id., at 282. The Plaintiff has failed to provide such evidence in this case. Therefore, the Defendants' motion for summary judgment on Plaintiff's Title VII claim should be granted.

## II.

### (Pendant State Law Claims)

If the Court adopts the recommendation made herein with regard to Plaintiff's federal claim, Plaintiff's pendant state law claims for defamation will be the only claims remaining in this lawsuit. When federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims should be remanded back to state court for resolution under the general



doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). Remand of this remaining state law cause of action will not only allow the more appropriate court to rule on this exclusively state law claim, but will not prejudice the parties, as this claim has already been briefed and the parties may seek a fast track for resolution of this claim at the state level. See Rule 40(c), S.C.R.Civ.P. Additionally, if summary judgment were to be denied, it would be much more appropriate for this claim to be tried by the state courts.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's Title VII discrimination claim (third cause of action) be **granted**, and that that claim be **dismissed**. It is further recommended that Plaintiff's remaining state law claims for defamation be remanded to state court for disposition under United Mine Workers v. Gibbs, and its progeny.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

July 10, 2006

16

